No. 47,571

STATE OF KANSAS, *Appellee*, v. EVERETT L. CAMERON, and
ROBERT D. BENTLEY, *Appellants*

(533 P. 2d 1255)

Opinion filed April 5, 1975.

*Douglas J. Irwin* [Court-appointed], of Wichita, argued the cause and was on the brief for the appellants.

*Clifford L. Bertholf*, Assistant District Attorney, argued the cause, *Curt T. Schneider*, Attorney General, *Keith Sanborn*, District Attorney, and *Stephen M. Joseph*, Assistant District Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendants-appellants (Everett L. Cameron and Robert D. Bentley) appeal from convictions by a jury of four counts of aggravated robbery; two counts of aggravated burglary; one count of rape; and one count of aggravated sodomy.

On March 16, 1973, at approximately 10:30 p. m. defendants forced their way into a room at the Airline Motel in Wichita. The

room was occupied by a young married couple on their wedding night. Defendants forced entry when the young husband responded to a knock on the door. Cameron was armed with a shotgun and Bentley with a pistol. When defendants entered the room the wife retreated to the bathroom. Cameron ordered her out and both the husband and wife were ordered to lie on the floor. Defendants took eight dollars from the husband, his watch and wedding ring—and from the wife her engagement and wedding rings and one dollar. After robbing the couple of all their cash and jewelry each defendant raped the wife and committed anal copulation upon her. Bentley, upon threat of death, then forced the wife to commit oral copulation on him. Defendants then tied the young couple with strips of cloth torn from a bedsheet and as they left the young couple's room Bentley struck the wife on the head with his pistol.

After defendants left the Airline they proceeded to the Townhouse Motel, arriving around 11:40 p. m. Gerald Dewberry was returning to his room at the Townhouse with food which he had brought from the motel restaurant for himself and his business partner, Gerald A. King, who was inside the room at the time and as Dewberry opened the door to his room, Bentley produced his pistol and forced his way into the room. A few minutes later Cameron, armed with his shotgun also entered the room. Dewberry and King were ordered to lie on the floor. Defendants then proceeded to take their money and jewelry, and while Dewberry and King were still on the floor, defendants sat down and ate the food which Dewberry had brought from the motel restaurant. Defendants kicked and severely beat both Dewberry and King and tied them with strips of cloth torn from bedsheets in the same manner as they had tied the newlyweds an hour earlier.

Three days later, on March 19, 1973, defendants were arrested. After a line-up identification, complaints were filed charging defendants on eight counts as previously stated.

Prior to their trial, which was set for August 21, 1973, defendants broke jail on August 17, but were apprehended soon thereafter. Following their apprehension after the jailbreak, defendants filed motions for continuance and change of venue, which were denied. The trial was commenced as previously scheduled. Defendants were jointly tried to a jury and each was convicted of all of the eight counts charged.

In the first of eight points specified on appeal, defendants contend the trial court erred in denying their request for continuance due to the fact that their escape from jail occurred only two days prior to the commencement of their trial. Defendants argue that their escape from jail generated such radio, television and newspaper publicity that being forced to go to trial, within two days thereafter, deprived them of life and liberty without due process of law.

In much the same manner, in point two, defendants assert that because of publicity surrounding their escape they were deprived of a fair and impartial trial when their motions for change of venue were denied. Defendants combine their arguments on points one and two and we shall consider the two points together.

Each defendant had previously filed a motion for a change of venue claiming that publicity in Wichita newspapers immediately following their arrests prevented a fair trial. Their motions were heard and denied by the administrative judge on June 8, 1973.

The basis for a change of venue in Kansas is governed by K. S. A. 22-2616 (1) which reads:

"(1) In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

We glean from the record that when the motions were heard by the trial court one or more of the newspaper articles were exhibited to the court, but none of the newspaper accounts or radio broadcasts are reproduced in the record on appeal. Apparently, no other evidence was submitted. It appears that, in substance, defendants argument is that the publicity generated by the nature of the offenses and the jailbreak constitutes prejudice *per se*. Defendants' argument is squarely met by our decision in *State v. Randol*, 212 Kan. 461, 513 P. 2d 248, wherein we held:

"The mere publication of newspaper articles does not establish prejudice *per se* that defendant cannot obtain a fair and impartial trial in the county." (Syl. ¶ 1.)

It has long been the law of this jurisdiction that a change of venue in a criminal case lies within the sound discretion of the trial court. (*State v. Randol*, supra.) The burden of proof is cast upon the defendant to show prejudice in the community. (*State v. Anderson*,

202 Kan. 52, 446 P. 2d 844.) Furthermore, prejudice must be established "not as a matter of speculation but as a demonstrable reality." (*State v. McLauglin,* 207 Kan. 594, 485 P. 2d 1360; and *Woods v. Munns,* 347 F. 2d 948 [10th Cir. 1965]). Notwithstanding defendant's failure to present affirmative evidence, we have carefully examined the record in this regard. The record discloses that fifty-seven jurors were examined on *voir dire;* twenty were excused for cause, but only nine were challenged and excused because of knowledge of publicity about the case. The other eleven jurors were excused for medical or other reasons unrelated to possible prejudice by reason of publicity. The *voir dire* examination of the prospective jurors demonstrates that the community was far from saturated with prejudice. Defendants have totally failed to show so great a prejudice existing against them that they could not obtain a fair and impartial trial in Sedgwick County.

The granting of a continuance like change of venue also lies within the sound discretion of the trial court. (*State v. McVeigh,* 213 Kan. 432, 516 P. 2d 918.) Concerning the granting of continuances K. S. A. 22-3401 provides:

"All persons charged with crime shall be tried without unnecessary delay. Continuances may be granted to either party for good cause shown."

Defendants make the same argument with respect to the overruling of their motions for a continuance as that advanced on change of venue; that is, the publicity generated by their escape shows good cause for continuance. What has been said concerning change of venue effectively answers the argument of defendants with respect to denial of a continuance. Absent a showing of actual prejudice, the trial court's refusal to grant a continuance does not constitute an abuse of discretion. We further note that defendants did not renew either their motions for change of venue or continuance at the close of *voir dire* examination.

In their third point defendants contend the trial court erred in denying their motions to sever counts Nos. 1, 2, 3, 4 and 7 relating to offenses at the Airline Motel from counts Nos. 5, 6 and 8 concerning charges arising from defendant's acts at the Townhouse Motel. Defendants assert that jumbling of the eight separate counts prevented a concentrated consideration of each count by each person on the jury panel. They further say that the offenses occurring at the Airline Motel are not related to nor was there a common element of substantial importance to connect them with the offenses

occurring at the Townhouse Motel. Defendants' position cannot be maintained. Joinder of counts in the same complaint or information is governed by K. S. A. 22-3202 (1) which reads:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The statute is said to have codified prior case law of this state governing joinder of offenses in one information. (*State v. Thomas,* 206 Kan. 603, 481 P. 2d 964.) In *State v. Thomas,* supra, and more recently in *State v. Ralls,* 213 Kan. 249, 515 P. 2d 1205, this court has set forth the test to be applied in determining whether offenses were properly joined. In *Ralls* it was stated:

". . . When all of the offenses are of the same general character, require the same mode of trial, the same kind of evidence and occur in the same jurisdiction the defendant may be tried upon several counts of one information or if separate informations have been filed they may be consolidated for trial at one and the same trial. (citing cases.) "(pp. 256, 257.)

To the same effect see *State v. Wheeler,* 215 Kan. 94, 523 P. 2d 722.

In the instant case the two sets of offenses occurred within approximately one hour, all were committed in motels—and in each case the victims were robbed and tied in a similar manner. Even though the offenses of rape and sodomy were committed only at the Airline Motel, all of the offenses were closely connected in time and were similar in other characteristics. We believe joinder here fully meets the standards of the statute. (See, also, *State v. Anderson,* supra; and *State v. Jones,* 202 Kan. 31, 446 P. 2d 851.)

Defendants next urge error because of the trial court's denial of defendant Bentley's motion for a separate trial. Although Cameron did not file a motion for a separate trial, both defendants argue on appeal that the trial court's ruling prejudiced both of them. Their argument is that their trial strategy was restricted in that if one defendant took the stand and the other refused to do so, inferences therefrom would be drawn by the jury to the prejudice of both defendants. Defendants'argument overlooks the trial court's obligation, on the request of a defendant, to instruct that the failure to testify may not be considered against him. If one defendant had testified and the other had not, the one exercising his Fifth Amendment right would have been entitled to the instruction. In the in-

stant case neither defendant elected to testify, and there is no indication that either desired to do so. The jury was properly instructed in this regard. In short, we see no way in which defendants' trial strategy could have been restricted.

Under the provisions of K. S. A. 22-3204 the granting of separate trials, in such a case as this, is discretionary with the court. (*State v. Sullivan & Smith,* 210 Kan. 842, 504 P. 2d 190.)

Generally, an order for a separate trial of a defendant jointly charged with another must be based upon some ground sufficient to establish actual prejudice so as to require separate trials. In this connection the usual grounds are enumerated in 75 Am. Jur. 2d, Trial, § 20:

"The usual grounds for a severance are: (1) that the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) that evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) that a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants. . . ." (p. 135.)

None of the aforementioned grounds are claimed to exist in this case. We note, however, that where the defenses of two or more jointly charged defendants, represented by a single attorney, are shown to be in conflict or antagonistic, this court has registered emphatic disapproval of a joint trial. (*State v. Young,* 196 Kan. 63, 410 P. 2d 256; and *State v. Sullivan & Smith,* supra.)

Defendants next contend they were deprived of due process of law by a comment made by a detective to the victims after they had identified defendants at the line-up. After identifications had been made in writing and the line-up proceedings terminated, Detective Joseph A. Thomas told the victims they had identified the two subjects who had been arrested. Defendants claim contravention of *Kirby v. Illinois,* 406 U. S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877. Defendants have failed to preserve the question; they did not move to suppress the line-up identification; neither did they object to the in-court identification. Under the provisions of K. S. A. 60-404 defendants are precluded from raising the question for the first time on appeal.

On the merits defendants' position is untenable. Defendants claim contravention of *Kirby v. Illinois,* supra, which proscribes a

line-up that is unnecessarily suggestive or conducive to irreparable mistaken identification. In the case at bar the detective's observation was not made until after defendants had been identified and the line-up proceedings terminated. The record reveals the line-up was carefully organized and supervised.

Defendants claim they were prejudiced when the trial court, over objection, combined instructions concerning two counts in instructions Nos. 5, 8 and 9. In instruction No. 8 the court combined the charges of counts Nos. 5 and 6 relating to aggravated robbery of Dewberry and King, respectively. Instruction No. 8 reads:

"The defendants are charged in Count 5 and in Count 6 with the crime of aggravated robbery. The defendants have pleaded not guilty.

"To establish this charge, each of the following elements must be proved:

"1. That the defendants took the property from the person of Gerald R. Dewberry in Count 5 and that the defendants took the property from the person of Gerald A. King in Count 6.

"2. That such taking was by threat of bodily harm to Gerald R. Dewberry and Gerald A. King or by force.

"3. That at the time of such taking the defendants were armed with dangerous weapons, to wit: one double-barreled sawed-off shotgun and one unknown caliber revolver or pistol.

"4. That this act occurred on or about the 16th day of March, 1973, in Sedgwick County, Kansas."

In much the same manner the court combined instructions relating to the aggravated robbery of each of the newlyweds charged in counts Nos. 1 and 2 of the information. Likewise, instructions relating to the burglary charges at both motels were combined in instruction No. 9. Defendants' position appears to be that separate instructions as to each count and as to each defendant should have been given.

Defendants argue that the manner in which these instructions were structured misled the jury by indicating that if defendants were found guilty of one count, the jury would feel obligated to find them guilty on the other counts as well. Along the same line defendants further argue that by including both defendants in the instructions in question the jury would feel obligated to find both defendants guilty.

As quoted above in instruction No. 8 the court set out that defendants were charged in counts Nos. 5 and 6 with aggravated robbery. The same heading was used to explain the two counts in Nos. 5 and 9 to which the respective instructions related. Separate verdict forms with respect to each count and each defendant were

submitted. Under such circumstances we discern no danger that the jury could have been misled into believing that a finding of guilty on one count dictated a like finding in the other, or that a finding of guilty as to one defendant compelled the same finding as to the other. Although we find no prejudicial error in the case at bar, we suggest that the better practice in such a case is to give PIK [Criminal] 52.07 (More than one defendant) and PIK [Criminal] 68.07 (Multiple Count) in addition to the specific instructions relating to each count.

Defendants base their next point on the denial of their requested instructions on robbery, burglary, and sodomy as *lesser included* offenses of the aggravated degrees of those offenses as charged in the information. Defendants say that the trial court has a duty to instruct on the lesser included offenses even though the evidence as to the lesser offense or offenses may not be strong. (Citing *State v. Roberson,* 210 Kan. 209, 499 P. 2d 1137.)

While K. S. A. 21-3107 (3) requires that instructions on lesser included offenses be given this duty arises only where there is evidence of circumstances under which the defendant might have reasonably been convicted of the lesser offense. (*State v. Hollaway,* 214 Kan. 636, 522 P. 2d 364; *State v. Reed,* 214 Kan. 562, 520 P. 2d 1314; and *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728.)

In this case the evidence is overwhelming and undisputed that the persons who committed the robberies and sodomy were armed with a shotgun and a pistol, and that those offenses were committed at gunpoint. Likewise, as to aggravated burglary, the evidence is undisputed that there were persons present in each motel room when the robbers forced their entrance. The defendants' alibi defense did not refute any of this evidence. Under all of the evidence adduced the defendants were either guilty of aggravated robbery, aggravated burglary, and aggravated sodomy, or they were not present and were guilty of nothing. Under the evidence here the jury would not have been warranted in finding defendants guilty of a lesser degree on any of the counts in question.

The defendants have abandoned their last claim of error directed at the trial court's instruction on circumstantial evidence in view of our recent decision in *State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728, wherein we held:

"An instruction on circumstantial evidence, which cautions the jury that a defendant should not be found guilty unless the facts and circumstances proved exclude every reasonable theory of innocence or states that the jury cannot

convict the defendant on circumstantial evidence unless the circumstances exclude every reasonable hypothesis of his innocence, is unnecessary when a proper instruction on 'reasonable doubt' is given; overruling *State v. White,* 211 Kan. 862, 508 P. 2d 842, and all other decisions in which this court has required a special instruction on circumstantial evidence." (Syl. ¶ 6.)

The judgment is affirmed.

FROMME, J., not participating.