# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1624-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

STEVEN E. YOUNG,

      Defendant-Appellant.

_____

> Submitted April 8, 2019 – Decided May 21, 2019
>
> Before Judges Sabatino and Mitterhoff.
>
> On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 12-01-0088.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Thomas G. Hand, Designated Counsel, on the brief).
>
> Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Steven Young appeals the trial court's denial of his post-conviction relief ("PCR") petition without an evidentiary hearing. We affirm, substantially for the sound reasons set forth in Judge Jeanne T. Covert's written opinion.

We derive the following facts from the record. On February 27, 2013, a jury convicted defendant of first-degree aggravated sexual assault upon a physically helpless, mentally defective or mentally incapacitated person, N.J.S.A. 2C:14-2(a)(7) (counts one and three); two counts of third-degree invasion of privacy, N.J.S.A. 2C:14-9(b) (counts two and four); and third-degree aggravated criminal sexual contact with a physically helpless, mentally defective or mentally incapacitated person, N.J.S.A. 2C:13-3(a) (count five). After merger, the judge sentenced to an aggregate term of eighteen years, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2.

Defendant, a licensed practicing nurse, was charged with caring for the victim, B.Q.,[1] who suffered catastrophic injuries when he was twelve years old after being struck by an automobile while riding his bicycle. B.Q.'s injuries left him quadriplegic, unable to speak and in need of twenty-four hour-skilled

---

[1] We use the victim's initials to protect his identity.

nursing care to assist with all aspects of his daily life. Defendant admitted that on two occasions, he performed fellatio on B.Q. and recorded it on his cell phone,[2] but asserted that B.Q. consented to the sexual acts. Consequently, a main focus of the trial involved B.Q.'s ability to communicate.

Trial testimony revealed that B.Q. has limited ability to communicate, by blinking his eyes, moving his head, or making a noise. The owner and operator of the health care agency, ACW health care (ACW), which employed defendant, testified that she oversaw B.Q.'s care and was familiar with B.Q.'s needs. She stated that B.Q. was unable to communicate and needed intensive medical care. While he would moan to try to communicate, it was unclear whether he was responding to a question.

Similar testimony was presented by B.Q.'s father. He testified that it was uncertain whether B.Q.'s blinking was directly responsive to questions as there was usually a delay in B.Q.'s responses. B.Q.'s father expressed his frustration in attempting to communicate with B.Q.

> No, he can't speak. He can – when he's alert and in good form he can usually make some sort of noise like ahhhhh. But you can ask him a question, there is a delay between the time you ask him a question and if you're in a hurry for an answer you may ask him two or three questions before he --- that have a yes/no answer

---

[2] The jury viewed the videos, which are not a part of the record.

before he responds. And sometimes you're not really sure which question he answered.

And, if he can't – if after a while he can't make a verbal response then you ask him to try and turn his head. And sometimes he can and very often, you know, you'll have to wait half a minute or something to see a response. And then when he can't do any of that, then you'll ask him to blink his eyes

. . . .

And one of the biggest frustrations for his mom and I is to know what he's really thinking, what he's really answering to.

As part of an unrelated investigation, Investigator Terry King of the Camden County Prosecutor's Office Child Abuse Unit came across two videos of defendant performing fellatio on an individual, later identified as B.Q. Prior to trial in the instant matter, the court made an in limine ruling that there be no reference to the Camden County investigation. Counsel indicated that the witnesses were instructed on the limitation as well.

King testified at trial concerning how he obtained the videos. During his testimony, King stated that during defendant's initial interview, defendant admitted to committing the act because he was raped when he was thirteen years old. Trial counsel requested a sidebar and objected to this testimony, specifically because the statement had "no basis in fact" and it was brought up

4

in connection with the other matter with which defendant was charged. The State argued it would have been impossible to separate the two incidents because the police report to which King referred during his testimony had notes regarding both incidents. The trial court sustained the objection and noted its concern regarding Investigator King's testimony as follows: "And I do have concerns, you know, he's already said a few things that make me feel a little uneasy about the instruction and the limiting ruling of the Court. So if you feel that there is any - you know, jump in immediately, I really don't want ..."

Shortly after, the court ordered a brief recess and repeated its concerns to the State:

> But, you know, I hope that you can take the time to talk to your witness. I'm not sure what it is that he doesn't get about my instruction because, I don't know, I'll treat it to a lack of familiarity with his reports maybe or something like that. But maybe, you know, if you can reiterate the Court's instruction. Obviously he's already started testifying and we have a sequestration order and you can't discuss anything other than that. But I need to protect the record.

The State blamed the witness for not understanding the instruction. The trial court then noted that trial counsel

> certainly isn't going to object to this making it more emphatic with this witness that obviously should know better than, you know, within the first minute he's on the stand to mention DYFS and the Camden County jail

when I made a very specific limiting instruction. I'm not sure what he [Investigator King] doesn't get about that.

At the conclusion of the State's case, defendant made a motion for acquittal on the basis that the state did not prove that B.Q. did not consent to the sexual acts in question. The State acknowledged that since B.Q. could not communicate, he did not testify that he did not give defendant consent. The judge denied the motion, finding that under the totality of the circumstances, a reasonable jury could find that B.Q. did not consent or lacked the ability to consent.

No defense witnesses were called, and defendant exercised his right not to testify. After deliberating for a few hours, the jury convicted defendant on all charges.

Defendant appealed the verdict, and raised the following issues:

POINT I

BECAUSE THE STATE FAILED TO PROVE LACK OF CONSENT OR THE ABSENCE OF ABILITY TO CONSENT, [DEFENDANT'S] MOTION FOR A JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED.

POINT II

THE COURT'S JURY INSTRUCTION ON THE DEFENSE OF CONSENT, WHICH WAS

6

INAPPLICABLE TO THE DEFENDANT INTERPOSED IN THIS MATTER, BOTH DEPRIVED [DEFENDANT] OF HIS OWN DEFENSE AND DIRECTED VERDICTS OF GUILT AS TO EACH OF THE CRIMES CHARGED.

POINT III

THE COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT CONSENT COULD BE A DEFENSE TO AGGRAVATED CRIMINAL SEXUAL CONTACT.

POINT IV

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

We rejected the foregoing arguments and affirmed defendant's conviction and sentence. State v. Steven E. Young, A-5099-12 (App. Div. Dec. 7, 2015).

Thereafter, defendant, pro se, filed the instant application seeking post-conviction relief. Following a non-evidentiary hearing at which defendant was represented by assigned counsel, Judge Covert denied the defendant's PCR petition without an evidentiary hearing. Defendant now appeals the denial of PCR.

On this appeal, defendant raises the following points:

POINT I:

THE PCR COURT ERRED IN NOT HOLDING AN EVIDENTIARY HEARING WHEN IT ACCEPTED

7

A-1624-17T4

THE ASSERTIONS MADE IN TRIAL COUSEL'S CERTIFICATION AS TRUE WITHOUT SUBJECTING THESE ASSERTIONS TO BE TESTED IN THE CRUCIBLE OF CROSS-EXAMINATION

POINT II:

THE PCR COURT ERRED IN FINDING THAT TWO OF DEFENDANT'S CLAIMS WERE BARRED

Having considered the record in light of the applicable legal principles, we find no merit in defendant's arguments. The PCR judge's opinion is legally sound and well supported by the record. We add the following comments.

In cases where the PCR court does not conduct an evidentiary hearing, we review the PCR judge's determinations de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). A PCR petitioner carries the burden to establish the grounds for relief by a preponderance of the credible evidence. State v. Goodwin, 173 N.J. 583, 593 (2002).

First, we turn to PCR court's determination that certain of defendant's contentions are procedurally barred under Rule 3:22-4. Specifically, defendant contends that the trial court erred by failing to adequately charge the jury on the issue of consent. In addition, defendant contends that the trial court erred in failing to strike the testimony by the State's investigator Terry King that he admitted he committed the act because he was raped at the age of thirteen.

8

Other than for enumerated exceptions,[3] Rule 3:22-4 bars a defendant from employing post-conviction relief to assert a claim that could have been raised at trial or on direct appeal. See State v. Nash, 212 N.J. 518, 546 (2013) ("A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal . . . ."). Moreover, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." R. 3:22-5. Stated another way, "[a]n issue decided in a direct appeal cannot thereafter be considered again on a PCR

---

[3] The three enumerated exceptions are:

> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or
>
> (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.
>
> [R. 3:22-4(a).]

application." State v. Jenkins, 221 N.J. Super. 286, 292-93 (App. Div. 1987) (citing State v. Smith, 43 N.J. 67, 74 (1964)).

In this case, as the PCR judge correctly concluded, the issue concerning the adequacy of the jury instructions on consent was in fact raised by defendant and rejected on direct appeal. In addition, we agree that defendant could have argued on his direct appeal that the investigator's testimony should have been stricken. We therefore agree with the PCR judge that these legal arguments are procedurally barred by Rule 3:22-4(a).

Nonetheless, Rule 3:22-4(a)(2) contains an express exception for claims of ineffective assistance of counsel. Accordingly, as did the PCR court, we will address the merits of defendant's claim of ineffective assistance of counsel. See State v. Preciose, 129 N.J. 451, 460 (1992) ("Ineffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding."). To establish an ineffective-assistance-of-counsel claim, a convicted defendant must demonstrate: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

"[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999), certif. denied, 162 N.J. 199 (1999). "Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10.

Defendant argues his prior counsel was deficient in failing to obtain and review the video recordings depicting his performance of fellatio on B.Q. Defendant argues that had he known what was depicted on the videos, he would have pled guilty and potentially incurred a lesser sentence. As the PCR judge found, defendant's claims that he was unaware of the contents of the videos were "unsupported, baseless assertions, unaccompanied by certifications by the defendant, trial counsel, or anyone else." Contrary to defendant's assertion, the court found there was substantial evidence that the defendant was aware of the content of the videos, including the fact that his face was visible in them and they were filmed on his phone. Regardless, the PCR judge concluded that even if trial counsel's performance was arguably deficient for not showing defendant

11                                                                          A-1624-17T4

the videos, the error did not cause him prejudice at trial, because the primary contested issue at trial was whether the victim, B.Q., consented to the acts performed by defendant, not if the acts themselves occurred.

For these reasons, we conclude that defendant has failed to establish that his counsel was constitutionally deficient. The PCR judge did not misapply his discretion in denying an evidentiary hearing, as defendant failed to establish a prima facie basis for relief. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)) ("[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing.").

The remaining issues raised by defendant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1624-17T4